**SECURITIES AND EXCHANGE COMMISSION, Appellant/Cross–Appellee,**

**v.**

**COMSERV CORPORATION, Richard P. Daly, Theodore Priem, William Gilster, and Thomas A. Johnson, Appellees/Cross–Appellants.**

**Nos. 89–5063, 89–5064.**

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 9, 1989.

Decided July 24, 1990.

---

See also, D.C., 698 F.Supp. 784.

James A. Brigagliano, Washington, D.C., for appellees/cross-appellants.

Jeffrey L. Sikkema, Minneapolis, Minn., for appellant/cross-appellee.

Before LAY, SNEED *, and McMILLIAN, Circuit Judges.

SNEED, Senior Circuit Judge:

The Securities and Exchange Commission (SEC) appeals the district court decision awarding $195,496.85 in attorneys' fees and expenses to Thomas A. Johnson under the Equal Access to Justice Act (EAJA). The SEC contends that it was "substantially justified" in bringing the underlying suit against Johnson. It also argues that Johnson did not "incur" fees within the meaning of EAJA because his

attorneys' fees ultimately may be or have been paid for by an insurance company.

Johnson cross-appeals, seeking a cost of living increase in the hourly rate used to calculate the amount of the award.

We affirm the district court's holding that the SEC was not substantially justified in pursuing its case against Johnson. However, we reverse its holding that Johnson was eligible for an EAJA award and accordingly vacate the award of attorneys' fees. Our jurisdiction is derived from 28 U.S.C. § 1291 (1982).

## I.

### FACTS AND PROCEEDINGS BELOW

At the time this lawsuit began, Comserv licensed computer software products to manufacturers.[1] In May 1985, the SEC filed suit in U.S. District Court, alleging that Comserv and four of its officers, including Johnson, had engaged in various securities law violations.[2] The SEC sought an injunction to prevent all of the defendants from engaging, in the future, in the acts and practices alleged in the complaint. Each of the defendants except Johnson consented to a permanent injunction against future violations, while neither admitting nor denying the allegations. Johnson denied the allegations as they related to him. The SEC pursued its suit against Johnson.

After conducting discovery, Johnson and the SEC filed cross-motions for summary judgment. The district court judge denied both motions in a written order on December 28, 1987. He noted that while he was "inclined to believe that Johnson did commit one or more violations of the securities laws," he had "serious doubts" that an injunction against Johnson was required.

---

* Honorable Joseph T. Sneed, Senior Judge, United States Court of Appeals for the Ninth Circuit, sitting by designation.

1. In February 1987, Management Science America, Inc. (MSA) acquired Comserv. Comserv continued to operate as a wholly-owned subsidiary of MSA after this merger.

2. The SEC alleged that Johnson had personally violated Section 17(a) of the Securities Act of 1933, 15 U.S.C. 77q(a) (1988), Section 10(b) of the Securities and Exchange Act of 1934, 15 U.S.C. 78j(b) (1988), and Rules 10b–5 and 13b–2, 17 C.F.R. 240.10b–5 and 240.13b2–2 (1989), and that he aided and abetted others' violations of Sections 13(a) and 13(b)(2) of the 1934 Act, 15 U.S.C. 78m(a) and 78m(b)(2) (1988), and Rules 12b–20, 13a–1, and 13a–13, 17 C.F.R. 240.12b–20, 240.13a–1, 240.13a–13 (1989).

The SEC proceeded with the trial, and Johnson moved to dismiss the action after the SEC completed its case in chief. The district court granted Johnson's motion in May 1988. In its prior bench ruling on April 22, 1988, the court stated that "the SEC has failed to convince the Court that Johnson violated the law," and "the Court would not order an injunction against Johnson even if the SEC had shown a violation." The court ruled that Johnson did not have the requisite scienter, i.e., recklessness, for the violations with which he was charged. Furthermore, the court said that even if Johnson had violated the law, it found no "evidence to show that 'there is a reasonable likelihood of further violations in the future.'" Such a finding is a necessary predicate to an injunction in these circumstances. The SEC did not appeal the district court's ruling on the merits.

Johnson subsequently filed a timely application for attorneys' fees and expenses under the Equal Access to Justice Act (EAJA), Pub.L. No. 96–481, tit. II, 94 Stat. 2325 (1980) (codified at 5 U.S.C. § 504 (1988) and 28 U.S.C. § 2412 (1988)). Under EAJA,

> a court shall award to a prevailing party ... fees and other expenses ... incurred by that party in any civil action ... brought by or against the United States ... unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

28 U.S.C. § 2412(d)(1)(A).

The SEC opposed Johnson's motion, asserting that: (1) it had been "substantially justified" in seeking an injunction against Johnson; (2) "special circumstances" precluded the award;[3] and (3) Johnson had failed to demonstrate that he was eligible for an award of fees under EAJA. Concerning the third assertion, the SEC pointed to the existence of an insurance policy held by Comserv ("the policy"). By the terms of the policy, the insurer, National

Union Fire Insurance Company of Pittsburgh, Pennsylvania (National Union) agreed to reimburse Comserv for Comserv's own indemnification of its officers and directors for "damages, judgments, settlements, costs, charges or expenses incurred in connection with the defense of any action, suit or proceeding or any appeal therefrom to which the Directors or Officers may be a party or with which they may be threatened...." The policy specifies that National Union would pay ninety-five percent of all "costs, charges and expenses" over and above an initial $5,000 deductible per director or officer. In addition, the insurance policy contains a subrogation clause, requiring Comserv to allow National Union to recover payments made under the policy if Comserv has any rights to obtain such recovery. Introducing a copy of the policy into the record, the SEC argued that Johnson had not "incurred" attorneys' fees within the meaning of the statute because his fees were paid by National Union, and that therefore, he was ineligible for an EAJA award.

The district court rejected each of the SEC's three arguments and granted Johnson's motion. It held that "[g]iven the dearth of evidence [presented by the SEC to support its case against Johnson], the SEC's position was barely tenable, much less substantially justified.... The court cannot condemn too strongly the SEC's decision to take this case to trial when it knew that no injunction would be issued." Second, it rejected the SEC's "special circumstances" argument, and held that "without additional evidence Johnson's silence is not a sufficient basis for the SEC's action." Finally, the court held that Johnson was eligible for an EAJA award, despite the indications in the record that Comserv was paying Johnson's legal fees, that National Union would reimburse Comserv for the large part of these expenses, and that National Union might obtain some of

---

3. The "special circumstances" cited by the SEC were that Johnson had asserted his Fifth Amendment right against self-incrimination during the SEC's initial investigation. The SEC argued that its inability to obtain information from Johnson prevented it from assessing accurately the likelihood of its ultimate success in seeking an injunction against Johnson. This argument was not raised on appeal.

the proceeds of an EAJA award to Johnson pursuant to a subrogation clause.

In one respect, however, Johnson did not prevail below. His initial request for attorneys' fees incorporated a 26.5% cost-of-living increase in the statutory level of seventy-five dollars per hour. The district court ruled that an increase was "not appropriate," and awarded Johnson $125,936.25 for attorneys' fees and $69,560.60 for litigation expenses.

Both Johnson and the SEC appealed to this court. The SEC asserted that it was substantially justified in seeking an injunction against Johnson and that Johnson is ineligible to receive an EAJA award. With respect to ineligibility, the SEC alleged that Johnson did not personally "incur" attorneys' fees or other expenses because his defense costs were covered by Comserv's director and officer liability insurance policy. National Union, the SEC argued, is the real party in interest for receipt of an EAJA award, and is clearly ineligible under EAJA.

Johnson responded that the SEC was not substantially justified in seeking an injunction against him and that the existence of insurance coverage does not render him ineligible for an award under EAJA. He argued that Congress did not intend that courts should probe into the facts of every case to determine who would be responsible ultimately for attorneys' fees. Johnson said such inquiries would tend to spawn additional litigation to resolve the issue of ultimate responsibility. In the alternative, Johnson argued that if he is ineligible, the court should look to Comserv, not National Union, in determining whether an EAJA award is still appropriate. He asserted that National Union was not a party to the underlying suit and thus cannot be either the real party in interest or the prevailing party for purposes of an EAJA award.

Johnson also argued that the district court's denial of a cost of living increase was improper. He insisted that most courts have viewed a cost of living increase as an automatic adjustment, and that most have used the rate of inflation from the

Consumer Price Index to calculate the proper rate.

Because of what we considered to be numerous deficiencies in the record, we ordered the parties, on April 16, 1990, to provide additional information in response to enumerated questions within 60 days. We received a timely response from Johnson, in which the SEC joined.

## II.

### STANDARD OF REVIEW

■ This court will reverse a district court's decision to award fees under EAJA only for an abuse of discretion. *SEC v. Kluesner,* 834 F.2d 1438, 1439 (8th Cir. 1987). In applying this standard, we review the district court's conclusions of law de novo, and reject its findings of fact only if clearly erroneous. *Kluesner,* 834 F.2d at 1439–40 (quoting *Brouwers v. Bowen,* 823 F.2d 273, 275 (8th Cir.1987) (per curiam)).

We also apply the abuse of discretion standard when reviewing the *amount* of an award under EAJA, including the district court's refusal to grant a request for a cost of living increase. *Pierce v. Underwood,* 487 U.S. 552, 571, 108 S.Ct. 2541, 2553, 101 L.Ed.2d 490 (1988); *McNulty v. Sullivan,* 886 F.2d 1074, 1074–75 (8th Cir. 1989) (per curiam).

## III.

### SUBSTANTIAL JUSTIFICATION

■ The burden of showing that its position in the underlying suit against Johnson was substantially justified rests on the SEC. *Cornella v. Schweiker,* 728 F.2d 978, 982 (8th Cir.1984). To discharge this burden, it must show that its decision to seek an injunction was "justified to a degree that could satisfy a reasonable person." *Pierce v. Underwood,* 487 U.S. at 565, 108 S.Ct. at 2550. *See also United States v. 1,378.65 Acres of Land,* 794 F.2d 1313, 1318 (8th Cir.1986) (government's position must be "clearly reasonable, well founded in law and fact, solid though not necessarily correct") (footnote omitted). This standard requires that the govern-

ment show that it was "more than [being] merely undeserving of sanctions for frivolousness." *Pierce*, 487 U.S. at 566, 108 S.Ct. at 2550.

 To obtain an injunction against Johnson under 15 U.S.C. § 78u(d) (1988), the SEC would have had to prove that Johnson had violated the law *and* " 'that there [was] *a reasonable likelihood* of further violation in the future.' " *SEC v. Commonwealth Chem. Sec., Inc.*, 574 F.2d 90, 99 (2d Cir.1978) (citation omitted); *SEC v. Tiffany Indus., Inc.*, 535 F.Supp. 1160, 1164 (E.D.Mo.1982). This it did not do. The district court concluded that not only did Johnson lack the scienter necessary to violate the applicable securities laws, but also the SEC had not offered any evidence supporting the need for an injunction. Because the government did not appeal the district court's decision on the merits, we *"must* accept [the district court's] findings as not clearly erroneous." *Kluesner*, 834 F.2d at 1440 (emphasis added). Moreover, a "separate-from-the-merits" EAJA appeal should not become a forum for reexamining the substantive issues of the lawsuit. *See Pierce*, 487 U.S. at 561, 108 S.Ct. at 2548. The district court clearly did not abuse its discretion in holding that the SEC was not substantially justified in seeking an injunction against Johnson.

## IV.

## EAJA ELIGIBILITY

### A. *Johnson's Eligibility Clarified*

We now turn to the heart of this lawsuit—whether Johnson is eligible for an EAJA award. To be eligible for an award of fees and expenses under EAJA, the party seeking fees must show that: (1) it is a prevailing party; (2) if an individual, his or her net worth did not exceed $2,000,000 at the time the action was filed or, if a corporation, its net worth did not exceed $7,000,-000 and it did not have more than 500 employees at the time the action was filed; and (3) that the fees and other expenses sought were "incurred by that party in [the] civil action" in which it prevailed. 28 U.S.C. §§ 2412(d)(1)(A)–(2)(B).

Clearly, Johnson is a prevailing party. The EAJA standard is not stringent; "a plaintiff [must] receive at least some relief on the merits of his claim...." to be a prevailing party. *Hewitt v. Helms*, 482 U.S. 755, 760, 107 S.Ct. 2672, 2675, 96 L.Ed.2d 654 (1987).[4] The SEC achieved *none* of the relief it sought against Johnson, while Johnson obtained *all* that he sought in pursuing his defense. Johnson was found not to have committed the alleged violations and no injunction was granted. Johnson therefore unquestionably prevailed. No one disputes this fact or that Johnson's net worth does not exceed the allowable limits.

 Rather, the SEC and Johnson dispute whether Johnson "incurred" the legal fees and expenses within the meaning of EAJA. The SEC says he did not and asserts that National Union is the real party in interest for an EAJA award; Johnson, on the other hand, says he did and states that if he is not a real party then surely Comserv is.

 Both are addressing the wrong issue. Neither National Union nor Comserv was a prevailing party in the underlying action. National Union was never a party to the action at all[5] while Comserv,

---

**4.** Although *Hewitt* concerned the interpretation of the term "prevailing party" under 42 U.S.C. § 1988, it is well-established that the standards set forth for interpretation of this language under one statute apply to "all fee-shifting statutes with 'prevailing party' language." *Independent Fed. of Flight Attendants v. Zipes*, —— U.S. ——, 109 S.Ct. 2732, 2735 n. 2, 105 L.Ed.2d 639 (1989) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 n. 7, 103 S.Ct. 1933, 1939 n. 7, 76 L.Ed.2d 40 (1983)). *See also Dunn v. United States*, 842 F.2d 1420, 1433 (3d Cir.1988); *cf. National Coa-*

*lition Against Misuse of Pesticides v. Thomas*, 828 F.2d 42, 44 (D.C.Cir.1987).

**5.** "The definition of a 'party' ... includes a 'person' named or admitted as a party, or properly seeking and entitled as of right to be admitted as a party." H.R.Rep. No. 1418, 96th Cong., 2d Sess. 15, *reprinted in* 1980 U.S.Code Cong. & Admin.News 4984, 4994. The cited language applies directly to 5 U.S.C. § 504(b), relating to agency proceedings. The House Report, however, states that "the definitions of 'fees and

although a named party, did not prevail.[6] The SEC achieved its sought-for result against Comserv, even though the dispute between the SEC and Comserv ended with Comserv's consent. The *Hewitt* standard still applies. *Cf. Dunn,* 842 F.2d at 1433 (party who achieves sought-for result in litigation is still regarded as "prevailing party," even if result was achieved by settlement through entry of a consent decree). Therefore, as among Johnson, Comserv, and National Union, only Johnson was a prevailing party. The question that remains, therefore, is whether Johnson "incurred" legal expenses as required by the statute.

### B. Did Johnson "Incur" Defense Costs?

Neither EAJA nor the legislative history provides a definition of the word "incur." Thus, we begin with an examination of whether Johnson actually paid his own legal expenses. "Mr. Johnson and Comserv entered into a severance agreement at or about the time that Mr. Johnson left Comserv in 1983. In that agreement, Comserv agreed to pay for Mr. Johnson's legal fees and expenses incurred in connection with the SEC investigation, which includes this litigation." Johnson Response to April 16, 1990 Order at 5 (hereinafter "Johnson Response"). Thus, Comserv was contractually obligated to pay Johnson's legal fees. It is also true that, even if Comserv and Johnson had not entered into this agreement, Comserv very likely would have been required to indemnify Johnson under Minn. Stat.Ann. § 302A.161(22) (West Supp.1989)

and Minn.Stat.Ann. § 302A.521(2) (West 1985). These provisions mandate corporate coverage of legal expenses for officers and directors in certain circumstances.[7] Johnson's attorneys directly billed Comserv and subsequently its successor MSA for Johnson's legal fees. These companies paid the bills, and then turned to National Union for reimbursement under the insurance policy. Johnson was never exposed to unconditional liability for legal fees in the SEC litigation.

Under the policy, National Union was obligated to reimburse Comserv for Comserv's indemnification of its officers and directors "only when the Directors and Officers shall have been entitled to indemnification by" Comserv. Johnson was so entitled. In recognition of this obligation, National Union agreed, in September 1986, to reimburse Comserv for "all of the attorneys' fees, experts fees and costs incurred in the defense of Thomas Johnson since May 1, 1984 through the conclusion of the *Johnson* suit." Johnson Response, Exh. 2. This agreement was part of an overall settlement that concerned National Union's reimbursement of expenses for other suits arising out of the same fact situation as Johnson's.

As to the possibility that National Union might have a right to recovery by way of subrogation any fees to which Johnson might be entitled under EAJA, the district court observed: "[T]he major part of any award of attorneys' fees in this case most likely will end up in the pocket of National

---

expenses,' 'party,' and 'person' in § 504(b) are to be applied to 28 U.S.C. § 2412." *Id.*

**6.** We apply the two-part test articulated in *Dunn:* (1) whether a plaintiff " 'achieved some of the benefit sought by the party bringing the suit,' " 842 F.2d at 1433 (citation omitted); and (2) whether the action was a " 'material contributing factor in bringing about the events that resulted in the obtaining of the desired relief.' " *Id.* (citation omitted).

**7.** The Minnesota statute stipulates also that the determinations of eligibility for mandatory indemnification according to the criteria listed in the code are made by a majority or quorum of the board of directors of each corporation (not including any persons who are parties to the

action in question), or by one of several other alternative methods, depending upon the circumstances, and provide also for a state court appeal. Minn.Stat.Ann. § 302A.521(6)(a)(1)–(5) (West 1985).

In this case, the record does not expressly reveal whether Comserv made the determination required to trigger the mandatory indemnification statute. Counsel for Johnson stated that they believe that Comserv did make such a determination, citing as the basis for this belief the fact that Comserv and its successor, MSA, have been paying Johnson's legal expenses. Johnson Response, at 3. We note, however, that Comserv may have paid Johnson's bills not because of its obligations under this statute, but because of its obligation under the severance agreement cited above.

Union pursuant to a subrogation clause." In response to an explicit question set forth in our April 16, 1990 order concerning reimbursement of National Union pursuant to the subrogation clause, counsel for Johnson stated:

> National Union has not been reimbursed, pursuant to subrogation or otherwise, for the payments of legal fees and expenses of Mr. Johnson.
>
> With respect to the future, we have been informed by the counsel for Comserv/MSA that Comserv/MSA contends that, pursuant to the September 2, 1986 letter, National Union is not entitled to any future reimbursement. Counsel for Comserv/MSA indicates that the September 2, 1986 letter sets forth the agreement regarding all of the attorneys' fees that Comserv/MSA incurred as a result of the underlying events, that this letter reflects a "global" settlement regarding attorneys' fees in all the proceedings, and that National Union waives any right to subrogation. It is unknown whether National Union takes a different position.

Johnson Response, at 6.

Nonetheless, the September 2, 1986 agreement does not provide explicitly that National Union waives its rights, whatever they might be, to subrogation. Therefore, although Johnson's counsel may be correct, we cannot conclude that National Union is not entitled under its policy with Comserv to subrogation with respect to any EAJA award to which Johnson might be entitled.[8]

One thing is clear, however. Johnson has never paid any attorneys' fees. We thus turn to cases construing EAJA or similar statutes in instances where one or more prevailing parties did not pay out-of-pocket expenses.

We turn first to *United States v. 122.00 Acres of Land*, 856 F.2d 56 (8th Cir.1988), a case applying not EAJA, but the Uniform Relocation Assistance and Real Property Acquisition Policies Act, Pub.L. No. 91–646, tit. III, § 304, 84 Stat. 1906 (codified at 42 U.S.C. § 4654 (1982)), whose fee shifting provisions turned on whether the fees had been "actually incurred."[9] There the party seeking fees from the United States had property the government sought to obtain by eminent domain. He retained an attorney under a contingency fee contract which provided that: " *'If there is no recovery, the undersigned will bear no expense for attorneys' fees.' " Id.* at 57 (emphasis added by *122 Acres* court). Although the property owner prevailed in his jury trial for just compensation, the government ultimately abandoned its plans to obtain the property, and the case was dismissed prior to his recovery of any funds. We held that because the property owner had no obligation under the contingent fee arrangement to pay his attorney anything, he had not "incurred" attorneys' fees within the meaning of the statute. *Id.* at 58. The lesson of *122 Acres* is that fees are incurred when there is a legal obligation to pay them.

In the instant case, Comserv, not Johnson, was legally obligated to pay Johnson's attorneys' fees. Whether the source of Comserv's legal obligation was grounded in contract or statute is immaterial. What is relevant is that, from the inception of the underlying lawsuit, Johnson was able to pursue his defense in the SEC action secure in the knowledge that he would incur no legal liability for attorneys' fees. To

---

**8.** Also affecting the question of whether National Union would be entitled to any of the proceeds of an EAJA award to Johnson is the nature of Johnson's agreement with Comserv concerning its payment of his legal fees. The record does not reveal whether Johnson, if the recipient of an EAJA award, is obligated to reimburse Comserv or M.S.A. for any portion of their payment of his legal expenses. Clearly, since National Union's contract with Comserv permits subrogation only from monies Comserv recovers, Comserv must be reimbursed by John-

son in order to trigger National Union's subrogation rights.

**9.** The Uniform Relocation Assistance and Real Property Acquisition Policies Act, 42 U.S.C. § 4654 (1982), requires that eligible parties "actually incurred" attorneys' fees. *United States v. 122.00 Acres of Land,* 856 F.2d 56, 57 (8th Cir. 1988). We do not find the difference in statutory language between this Act and EAJA, that is, the inclusion of the word "actually" modifying "incur," to be significant.

hold he "incurred" such fees is to turn the word upside down.

Such verbal gymnastics are not necessary to serve the primary intent of Congress in creating EAJA. That intent was " 'to diminish the deterrent effect of the expense involved in seeking review of, or defending against, unreasonable government action.' " [10] *Cornella v. Schweiker,* 728 F.2d 978, 981 (8th Cir.1984) (citations omitted). Neither the client in *122 Acres* nor Johnson in the instant case required the assistance of a federal fee-shifting statute to overcome the deterrent of attorneys' fees. Both were protected by private agreement (and Johnson perhaps also by state statute) from the burden of attorneys' fees. To allow either to shift his fees under a statute intended to remove the deterrent effect of fees is pointless.

We acknowledge there is an *exception* to the requirement that a legal liability for attorneys' fees must be incurred in order to be eligible for an EAJA award. In *Cornella v. Schweiker,* 728 F.2d 978, 987 (8th Cir.1984), we held that parties who were represented by pro bono counsel are not barred from receiving an EAJA award, even though they had not actually been assessed attorneys' fees. In so holding, we relied in part on legislative history, which suggests that awards to pro bono organizations were contemplated by Congress. *See id.* (quoting H.R.Rep. No. 1418, 96th Cong., 2d Sess. 15, *reprinted in* 1980 U.S.Code Cong. & Admin.News 4994). We held that where a pro bono attorney "forgives" a fee to a client unable to afford legal expenses, that client is eligible for an EAJA award on

the basis of that arrangement with the attorney. Other courts have reached a similar result. *See, e.g., American Ass'n of Retired Persons v. EEOC,* 873 F.2d 402, 406 (D.C.Cir.1989); *Watford v. Heckler,* 765 F.2d 1562, 1567 n. 6 (11th Cir.1985).

*122 Acres* and *Cornella* can be harmonized once the EAJA's purpose to remove the deterrent effect of attorneys' fees is understood. The client in *122 Acres* had eliminated any deterrent effect of fees by means of his contract with his attorney. Fees ceased to exercise a deterrent effect on his litigation decisions. Nor is it apparent that the incidence of litigation by those deserving representation would be increased. By contrast, in *Cornella* we observed that "[i]f attorneys' fees to *pro bono* organizations are not allowed ..., it would more than likely discourage involvement by these organizations in [cases against the government], effectively reducing access to the judiciary...." *Id.* at 986–87. Thus, by assisting in the financing of the pro bono representation effort, EAJA unquestionably contributes to removing the deterrent effect of fees for those pro bono-dependent clients and thereby increases the incidence of deserving representation. Thus, neither *122 Acres,* when its reasoning is applied to EAJA, nor *Cornella* is at odds with the intent of Congress to reduce or eliminate the deterrent effect of fees.

■ The lesson we draw from these two cases is that EAJA awards should be available where the burden of attorneys' fees would have deterred the litigation challeng-

---

10. *See also Spencer v. NLRB,* 712 F.2d 539, 549–50 (D.C.Cir.1983), *cert. denied,* 466 U.S. 936, 104 S.Ct. 1908, 80 L.Ed.2d 457 (1984) (footnotes omitted):

> The central objective of the EAJA, and of section 2412(d)(1)(A) in particular, was to encourage relatively impecunious private parties to challenge unreasonable or oppressive governmental behavior by relieving such parties of the fear of incurring large litigation expenses. Achievement of that end, it was believed, would promote three more general goals. First, Congress hoped to provide relief to the victims of abusive governmental conduct, to enable them to vindicate their rights

without assuming enormous financial burdens. Second, it sought to reduce the incidence of such abuse; it anticipated that the prospect of paying sizeable awards of attorneys' fees when they overstepped their authority and were challenged in court would induce administrators to behave more responsibly in the future. Third, by exposing a greater number of governmental actions to adversarial testing, Congress hoped to refine the administration of federal law—to foster greater precision, efficiency and fairness in the interpretation of statutes and in the formulation and enforcement of governmental regulations.

ing the government's actions, but not where no such deterrence exists.

Focusing on deterrence sheds light on the problem of the "stand-in" litigant who seeks fees under EAJA that, if received, would be passed on to an ineligible litigant. In *Wall Industries, Inc. v. United States,* 15 Cl.Ct. 796 (1988), *aff'd without opinion,* 883 F.2d 1027 (Fed.Cir.1989), for example, the court held that a corporation which prevailed in a tax refund case, Wall Industries, could not recover attorneys' fees under EAJA where the company's accounting firm, Arthur Young, required that Wall Industries initiate the lawsuit, chose the attorneys and directed the litigation strategy, and was the sole beneficiary of the underlying judgment in favor of Wall Industries. Wall Industries was a "stand-in" for Arthur Young, an otherwise ineligible litigant. The burden of legal fees could have deterred no one other than Arthur Young, a deterrence not cognizable by EAJA.

A similar situation arose in *Unification Church v. INS,* 762 F.2d 1077 (D.C.Cir. 1985), where three individuals and the church sued the INS to overturn its refusal to allow the three individuals to remain in the United States. *Id.* at 1079. The plaintiffs prevailed. The church, which had more than 500 employees, could not satisfy the statute's definition of "party." The individual plaintiffs could. The church had paid the legal fees for all plaintiffs, and each used the same lawyer, an individual who had represented the church since 1974. The court held that "where the fee arrangement among the plaintiffs is such that only some of them will be liable for attorney's fees, the court shall consider only the qualification *vel non* under the [EAJA] of those parties that will be themselves liable for fees if court-awarded fees are denied." *Id.* at 1082. Only those liable could be deterred by the obligation to pay fees. While admittedly the Church served an interest of a higher sort than did Arthur Young, both were parties without EAJA protection.

Like Arthur Young and the Unification Church, neither Comserv nor National Union was eligible for an EAJA award for fees. If Johnson recovered fees under EAJA, and if National Union were to be subrogated as a result of that award, National Union would recover an EAJA award to which it is not entitled. EAJA was not written to compensate National Union for the risks it has assumed or its costs of doing business.

## V.

## CONCLUSION

We conclude that the district court's finding that the SEC was not substantially justified in bringing its suit against Johnson was not clearly erroneous, and affirm that part of its judgment. However, we reverse the district court's holding that Johnson is eligible to receive an EAJA award. We so hold because Johnson, although a prevailing party meeting the financial qualifications of EAJA, did not incur legal liability for attorneys' fees *and* because the fee-deterrent-removal purpose of EAJA would not be served by an award of fees to an individual whose fees are fully paid by a noneligible organization. Because we vacate the award of attorneys' fees, we need not address the question of whether the district court abused its discretion in refusing to grant Johnson's request for a cost of living increase in its award of attorneys' fees.

AFFIRMED IN PART; REVERSED IN PART.